Paul R. Kiesel, State Bar No. 119854
  *kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
Cherisse H. Cleofe, State Bar No. 290152
  *cleofe@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:    310-854-4444
Fax:    310-854-0812

Richard C. Dalton, State Bar No. 268598
  *rick@rickdaltonlaw.com*
**RICHARD C. DALTON, LLC**
P.O. Box 358
Carencro, Louisiana 70520
Tel:    (337) 371-0375

Attorneys for Plaintiff CHRISTIAN A.
DALTON, Individually and on Behalf of All
Others Similarly Situated

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTIAN A. DALTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD SECURITIES LLC; ROBINHOOD FINANCIAL LLC; and ROBINHOOD MARKETS, INC.,<br><br>Defendant. | Case No. 3:21-cv-00697-KAW<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**(2) FRAUD AND DECEIT**<br><br>**(3) DECLARATORY RELIEF**<br><br>**(4) VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code §§ 1750, *et seq.*)**<br><br>**(5) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*)**<br><br>**(6) VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, *et seq.*)**<br><br>**(7) BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Plaintiff CHRISTIAN A. DALTON ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class," as defined below), brings this class action lawsuit against Defendants ROBINHOOD SECURITIES, LLC, ROBINHOOD FINANCIAL, LLC, and ROBINHOOD MARKETS, INC. (collectively, "ROBINHOOD" or "Defendants") and alleges as follows upon information and belief based, *inter alia*, upon investigation conducted by Plaintiff and his counsel, except as to those allegations pertaining to Plaintiff personally, which are alleged upon knowledge:

**INTRODUCTION**

1.    ROBINHOOD is an online introducing broker with a wildly popular platform. It has marketed itself to the public as a service that allows consumers unlimited, commission-free trades using a phone or computer. ROBINHOOD became very popular as a result of its marketing and advertising emanating from its headquarters in California and has positioned itself as a way for the masses to trade stocks, options, and cryptocurrency. In the past, it has used the slogan "Let the people trade."[1]

2.    ROBINHOOD has been very successful in its marketing and hit a chord with consumers who flocked to the platform to make the unlimited commission-free trades, as promised by ROBINHOOD. Unfortunately, however, ROBINHOOD was too successful for itself and did not have the capital, operational technology, and capabilities to handle trades for all of its customers appropriately. When trading volumes increased, it purposefully, willfully, and knowingly restricted trading in certain stocks including, but not limited to, Gamestop Corp. ("GME"), AMC Entertainment Holdings Inc. ("AMC"), BlackBerry Ltd ("BB"), Nokia Oyj ("NOK"), Bed Bath & Beyond, Inc. ("BBBY"), Express, Inc. ("EXPR"), Koss Corporation ("KOSS") and Naked Brand Group Ltd ("NAKD") (collectively, the "BLOCKED STOCKS") thereby depriving Plaintiff and the Class from the ability to freely invest and manipulating the open-market.

/ / /

/ / /

---

[1] @RobinhoodApp, Twitter (Mar. 23, 2016, 11:30 AM),
https://twitter.com/RobinhoodApp/status/712708069369782272.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**PARTIES, JURISDICTION, AND VENUE**

3.      Plaintiff, CHRISTIAN A. DALTON, resides in Carencro, Louisiana. At all relevant times hereto, Plaintiff was an active user of ROBINHOOD.

4.      Defendant ROBINHOOD SECURITIES, LLC is a Delaware Corporation headquartered in Menlo Park, California. ROBINHOOD SECURITIES, LLC is a registered broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). It acts as a clearing broker and clears trades introduced by Defendant ROBINHOOD FINANCIAL, LLC.

5.      Defendant ROBINHOOD FINANCIAL, LLC is a Delaware Corporation headquartered in Menlo Park, California. ROBINHOOD FINANCIAL, LLC is a registered broker-dealer with the SEC. It acts as an introducing broker and has a clearing arrangement with Defendant ROBINHOOD SECURITIES, LLC.

6.      Defendant ROBINHOOD MARKETS, INC. is a Delaware Corporation headquartered in Menlo Park, California. Defendants ROBINHOOD FINANCIAL, LLC and ROBINHOOD SECURITIES, LLC are wholly-owned subsidiaries of ROBINHOOD MARKETS, INC.

7.      ROBINHOOD is a trading app and platform with over 10 million active users.

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all proposed Class members exceed $5 million, exclusive of interest and costs, and many members of the proposed Class are citizens of a state different from Defendants.

9.      This Court has personal jurisdiction over Defendants because they are headquartered and have their principal place of business in California.

10.     This Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims alleged herein occurred in this District. Moreover, Defendants are headquartered and provided the financial services which are the subject of this Complaint in this District.

/ / /

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## FACTUAL BACKGROUND

11.     ROBINHOOD is an online platform that offers people the ability to invest in stocks, ETFs, and options through ROBINHOOD Financial and crypto trading through ROBINHOOD Crypto. ROBINHOOD operates a website and mobile apps for iPhone, Apple Watch, and Android to provide these financial services. It has no storefront offices and operates entirely online from its headquarters in California.

12.     ROBINHOOD is a Financial Industry Regulatory Authority ("FINRA")-approved broker-dealer, registered with the SEC. It is a member of the Securities Investor Protection Corporation.

13.     Over the past few years, ROBINHOOD reportedly has increased from 6 million subscribers in 2018 to 10 million by the end of 2019. It surpassed 13 million subscribers in May 2020.[2]

14.     ROBINHOOD's over 13 million customers place trades through its website or its "app."

15.     In 2019, ROBINHOOD raised $323 million in funding at a $7.6 billion valuation.

16.     ROBINHOOD has extensively marketed itself primarily to younger investors to fuel its expansion. Examples of ROBINHOOD's marketing slogans during this hasty expansion period include:

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Maggie Fitzgerald, *Start-up Robinhood Tops 10 Million Accounts Even as Industry Follows in Free-Trading Footsteps*, CNBC (Dec. 4, 2019), https://www.cnbc.com/2019/12/04/start-up-robinhood-tops-10-million-accounts-even-as-industry-follows-in-free-trading-footsteps.html;
Nathaniel Popper, *Robinhood Has Lured Young Traders, Sometimes With Devastating Results*, N.Y. Times (July 8, 2020), https://www.nytimes.com/2020/07/08/technology/robinhood-risky-trading.html.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

- Jan. 6, 2018

# Investing. Now for the rest of us.

Robinhood lets you learn to invest in the stock market for free.

- Jan. 1, 2019

# Invest for Free

Invest in stocks, ETFs, options, and cryptocurrencies, all commission-free, right from your phone or desktop.

- July 1, 2019

# Invest Commission-Free

Invest in stocks, ETFs, options, and cryptocurrencies, all commission-free, right from your phone or desktop.

Case No. 3:21-cv-00697-KAW
FIRST AMENDED CLASS ACTION COMPLAINT

- Jan. 1, 2020

## Break Free from Commission Fees

Make unlimited commission-free trades in stocks, funds, and options with Robinhood Financial. The same goes for buying and selling cryptocurrencies with Robinhood Crypto. Zero commission fees.

- May 28, 2020

# Break Free from Commission Fees

Make unlimited commission-free trades in stocks, ETFs, and options with Robinhood Financial, as well as buy and sell cryptocurrencies with Robinhood Crypto. See our fee schedule to learn more about cost.

17. The onboarding of so many clients by ROBINHOOD was done without regard as to whether it could adequately service its clientele as set forth herein. Moreover, ROBINHOOD's on-boarding allowed clients to open option accounts even though they lacked the appropriate level of experience.[3]

18. Despite these proclamations, on or about January 28, 2021, ROBINHOOD disregarded its "Let the people trade" mantra and blocked millions of its customers from trading particular securities.

19. On or around January 22, 2021, shares of stocks such as Gamestop Corp. ("GME") and others began to rise.

20. At that time, ROBINHOOD allowed retail investors to trade stocks on the open market.

---

[3] Nathaniel Popper, *Robinhood Has Lured Young Traders, Sometimes with Devastating Results*, N.Y. Times (July 8, 2020) (noting "at least part of Robinhood's success appears to have been built on a Silicon Valley playbook of behavioral nudges and push notifications, which has drawn inexperienced investors into the riskiest trading").

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

21.     On or about January 28, 2021, ROBINHOOD deprived Plaintiff and the members of the Class the ability to use its services by intentionally, abruptly, purposefully, willfully, and knowingly preventing the legitimate trading of the BLOCKED STOCKS. Meaning, Plaintiff and the Class, retail investors, could no longer invest, day trade, or, in some instances, even search for the BLOCKED STOCKS on ROBINHOOD.

22.     ROBINHOOD's actions were done purposefully, knowingly, and intentionally due to calls for capital that had been placed on it by the Depository Trust & Clearing Corporation ("DTCC").[4] The DTCC is Wall Street's main clearinghouse for stock trades.

23.     On the morning of January 28, 2021, the DTCC notified ROBINHOOD that it had to put up $3 billion in additional collateral as a cushion against the trades of its customers. According to Vlad Tenev, a co-founder of ROBINHOOD, this was "an order of magnitude more" than usually required.

24.     ROBINHOOD, not having such capital reserves on hand, negotiated to reduce the amount being asked of it. In exchange for it having to post only $700 million in collateral, ROBINHOOD agreed to limit trading, allowing customers to sell, but not buy, the BLOCKED STOCKS.

25.     Not all broker dealers reacted to the increase in trading volume by restricting trade and restricting their customers as ROBINHOOD did. For example, another brokerage house took a much more nuanced approach to protect itself. Rather than using the sledgehammer that ROBINHOOD applied to its customers, this other company restricted trading in certain volatile stocks by requiring purchasers to have the cash in their account to transact the purchase. Further, if a customer had previously held any of the stocks on margin, that customer had to reduce the margin balance to zero. Finally, for a short position a customer had to have a balance in their account of 300% of the value of the security shorted so as to hedge some of the risk if the price appreciated. Instead of distinguishing between customers who had the cash to buy the BLOCKED STOCKS and

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

---

[4] Nathaniel Popper, et al., *Robinhood, Under the Gun, Raises $2.4 Billion*, N.Y. Times (Feb. 1, 2021), https://www.nytimes.com/2021/02/01/business/robinhood-gamestop-trading.html.

those that were doing so in other positions, ROBINHOOD restricted purchases by all of its clients.

26.     FINRA regulates broker dealers like ROBINHOOD. FINRA's Rules and Guidance 5310.01 ("Best Execution and Interpositioning Rule") requires that ROBINHOOD "must make every effort to execute a marketable customer order that it receives promptly and fully." By not responding at all to some of its clients' orders to purchase BLOCKED STOCKS, ROBINHOOD breached this requirement and caused substantial losses due solely to its own self-serving intentional acts. As explained by ROBINHOOD in a recent blog post: "[T]hat's what led us to put temporary buying restrictions in place on a small number of securities that the clearinghouses had raised their deposit requirements on. It was not because we wanted to stop people from buying these stocks. We did this because the required amount we had to deposit with the clearinghouse was so large—with individual volatile securities accounting for hundreds of millions of dollars in deposit requirements—that we had to take steps to limit buying in those volatile securities to ensure we could comfortably meet our requirements."[5]  Simply put, faced with additional deposit requirements ROBINHOOD could not meet, and lacking the technology to restrict only certain accounts, ROBINHOOD choose a remedy that unnecessarily violated the Best Execution Rule, and in so doing, put its own interests above those of its customers.

27.     Upon information and belief, Defendants' actions were done purposefully, knowingly, and intentionally to manipulate the market for the benefit of people and financial intuitions other than Defendants' own client investors.

28.     In pulling the stocks from their app, Defendants manipulated the stock prices to go both up and down, depriving its client investors of potential gains.

29.     Additionally, Defendants deprived its client investors the ability to "short" the stocks while day trading.

30.     The Defendants completely blocked its client investors from purchasing the aforementioned stocks for no legitimate reason, thereby depriving its client investors of the benefits

---

[5] *What happened this week*, Robinhood Blog (Jan. 29, 2021),
https://blog.robinhood.com/news/2021/1/29/what-happened-this-week.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

of Defendants' services.

31.     Upon information and belief, ROBINHOOD pulled securities like the BLOCKED STOCKS from its platform to prevent its client investors from trading the BLOCKED STOCKS in the open market. In so doing, ROBINHOOD knowingly, purposefully, and willfully slowed trade in those stocks and the associated rise in share price, which in turn helped benefit individuals and large institutional investors who are not clients of ROBINHOOD.

32.     On January 28, 2021, Plaintiff used his ROBINHOOD app and was unable to purchase "GME" stock as planned for that day but was limited to only selling the stocks that Defendants' unlawfully blocked Plaintiff and members of the Class from purchasing.

33.     At times, some members of the Class could not find the BLOCKED STOCKS on the ROBINHOOD app, although all of these stocks are publicly traded companies available on other platforms.

34.     Thus, Plaintiff and members of the Class lost out on earning and profit opportunities.

**CLASS ALLEGATIONS**

35.     Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action.

36.     **Class Definition**. The proposed Plaintiff Class that Plaintiff seeks to represent is composed of and defined as follows:

> All customers of ROBINHOOD's trading platform on or about January 28, 2021.

37.     Plaintiff reserves the right to amend the class definition and to create subclasses, if necessary, to maintain a cohesive class that does not require individual inquiry to determine liability.

38.     Excluded from the Class are: (a) Defendants and their officers, directors, employees, principals, affiliated entities, controlling entities, agents, and other affiliates; (b) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (c) the Judge(s) assigned to this case and any members of their immediate families.

39.     Plaintiff is a member of the Class he seeks to represent.

40.     This action is properly maintainable as a class action.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

41.     The Class for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. While Plaintiff does not presently know the exact number of Class members, ROBINHOOD has millions of customers.

42.     The Class is readily ascertainable, and direct notice can be provided from the records maintained by Defendant, or by publication, the cost of which is properly imposed on Defendant.

43.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other Class members and Plaintiff has the same interests as other Class members. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the other members of the Class. Plaintiff is a more than adequate representative of the Class and will fairly and adequately protect the interests of the Class.

44.     The prosecution of separate actions by individual Class members could create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the members of the Class not parties to the adjudications.

45.     Furthermore, the expense and burden of individual litigation make it impracticable for the individual members of the Class to redress the wrongs done to them individually. If a class action is not permitted, Class members will continue to suffer losses, and Defendants' misconduct will continue without proper remedy.

46.     Defendants have acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

47.     Plaintiff anticipates no unusual difficulties in the management of this litigation as a class action.

48.     For the above reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

49.     There are questions of law and fact that are common to Class members, which predominate over any questions affecting only individual members of the Class. A class action will generate common answers to the below questions, which are apt to drive the resolution of the litigation:

a.  Whether ROBINHOOD owed a duty of good faith and fair dealing to Plaintiff and members of the Class and, if so, whether that duty was breached resulting in damage;

b.  Whether ROBINHOOD's conduct constitutes fraud against Plaintiff and the members of the Class;

c.  Whether Defendants' conduct violated their duties to Plaintiffs, thereby violating the rights of Plaintiff and members of the Class;

d.  Whether ROBINHOOD represented to Plaintiff and the members of the Class that its services had certain characteristics, uses, and benefits, a particular quality, and/or were improperly advertised violating the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*);

e.  Whether ROBINHOOD's actions relating to the provision of its service were unlawful, unfair, or fraudulent business acts or practices, thereby violating California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

f.  Whether ROBINHOOD advertised its services to Plaintiff and the members of the Class in a manner that was untrue and misleading, thereby violating California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*);

g.  Whether ROBINHOOD owed a fiduciary duty to Plaintiff and members of the Class, and, if so, whether that duty was breached resulting in damage;

h.  Whether this case may be maintained as a class action;

i.  Whether and to what extent Class members are entitled to damages and other monetary relief;

j.  Whether and to what extent Class members are entitled to equitable relief

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

including, but not limited to, restitution and a preliminary and/or a permanent injunction; and,

k.     Whether and to what extent Class members are entitled to attorneys' fees and costs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(By Plaintiff Against All Defendants)**

46.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

47.     In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract or agreement.

48.     As ROBINHOOD should have been aware, good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation.

49.     ROBINHOOD violated its duty to act fairly and in good faith.

50.     Plaintiff and the members of the Class entered into a relationship with ROBINHOOD as set forth herein, to wit, that Plaintiff and the Class would use the ROBINHOOD platform for "unlimited commission-free trading."

51.     Plaintiff and the members of the Class did all, or substantially all, of the significant things that the agreement required of them to do or, as applicable, they were excused from having to do those things.

52.     All conditions required for ROBINHOOD's performance had occurred, namely, that Plaintiff and Class members were entitled to perform "unlimited commission-free trading" of all securities as promised to them.

53.     ROBINHOOD prevented Plaintiff and Class Members from receiving the benefits under the agreement as set forth above, namely, it prevented trading in the BLOCKED STOCKS

and in fact, would allow only their sale so as to benefit ROBINHOOD.

54.     By doing the acts set forth above, ROBINHOOD did not act fairly and in good faith.

55.     Plaintiff and the Class were harmed by ROBINHOOD's conduct.

## SECOND CAUSE OF ACTION

### Fraud and Deceit

### (By Plaintiff Against All Defendants)

50.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

51.     Upon information and belief, Defendants' conduct constitutes fraud against Plaintiff and the members of the Class. Defendants, directly or through their agents and employees, prevented Plaintiff and the members of the Class from the ability to use the ROBINHOOD app to buy the BLOCKED STOCKS for no other legitimate reason but to manipulate the stock prices to decline. Defendants intended to defraud Plaintiff and the Class by concealing that the service would block: the legitimate buying and selling of the aforementioned stocks; complete access to their accounts; or the ability to make trades and/or access their funds to transfer to another brokerage firm in order to make legitimate and lawful day trades.

52.     Plaintiff and the Class justifiably relied on Defendants' representations and would not have invested in the ROBINHOOD app and services had they known that Defendants would prevent them from legitimate day trading and access to their funds. As a result, Plaintiff and members of the Class sustained damages.

53.     Defendants, directly and indirectly, made substantially similar misrepresentations and material omissions to Plaintiff and each member of the Class.

54.     On information and belief, Defendants were aware of the fraudulent nature of their actions which caused Plaintiff and members of the Class damages.

55.     As a result of Defendants' wrongful conduct, Plaintiff and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages.

56.     Defendants' acts were done maliciously, oppressively, and with intent to defraud, and Plaintiff and the Class are entitled to punitive and exemplary damages in an amount to be shown

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    according to proof at the time of trial.

2                        **THIRD CAUSE OF ACTION**

3                            **Declaratory Relief**

4                    **(By Plaintiff Against All Defendants)**

5    57.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs

6    above as though fully set forth herein.

7    58.    An actual controversy has arisen and now exists between Plaintiff and the

8    Defendants. As described above, Plaintiff contends that Defendants' conduct violated certain rights

9    and duties.

10   59.    A judicial determination of these issues and of the respective rights and duties of

11   Plaintiff and Defendants is necessary and appropriate at this time under the circumstances,

12   including, but not limited to, a determination of any question of interpretation and validity of the

13   written agreements between the parties and the Defendants' attempts to limit liability.

14   60.    Plaintiff seeks a judicial determination of the duties Defendants owe to their users,

15   their duty to operate reliable services, and their duty not to prevent the trading of the BLOCKED

16   STOCKS.

17   61.    Plaintiff seeks a judicial determination of the rights of Plaintiff and the Class under

18   the circumstance alleged herein.

19                       **FOURTH CAUSE OF ACTION**

20        **Violation of California Consumers Legal Remedies Act**

21             **Cal. Civ. Code §§ 1750, *et seq.***

22                    **(By Plaintiff Against All Defendants)**

23   62.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs

24   above as though fully set forth herein.

25   63.    The acts and practices of Defendants as described above were intended to deceive

26   Plaintiff and the Class as described herein and have resulted in harm to Plaintiff and the Class.

27   64.    The actions violated and continue to violate the California Consumers Legal

28   Remedies Act (at times referred to herein as "CLRA") in at least the following aspects:

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

a.  ROBINHOOD represented that its service had characteristics, uses, and benefits that it did not actually have (*i.e.*, the ability the engage in unlimited commission-free trading of all stocks) in violation of Section 1770(a)(5);

b.  ROBINHOOD represented that its service had a particular quality that it did not actually have (*i.e.*, the ability the engage in unlimited commission-free trading of all stocks) in violation of Section 1770(a)(7); and

c.  ROBINHOOD advertised their service with an intent not to sell it as advertised (*i.e.*, that the service would allow for unlimited commission-free trading of all stocks), in violation of Section 1770(a)(9).

By committing the acts alleged above, Defendants have violated the CLRA.

65.  ROBINHOOD falsely represented and/or concealed material facts regarding the ability of consumers to trade on its platform, information that is relied upon by consumers, such as Plaintiff and Class members, in making a decision about which services to use.

66.  Defendants' affirmative misrepresentations and material omissions and their publication of these material inaccuracies regarding the ROBINHOOD trading platform constitute unfair, deceptive, and misleading business practices in violation of California Civil Code section 1770(a).

67.  Plaintiff, on behalf of himself and the Class, seeks injunctive relief, only, on this Cause of Action.

### **FIFTH CAUSE OF ACTION**

**Violation of California Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, *et seq*.**

**(By Plaintiff Against All Defendants)**

68.  Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

69.  California Business and Professions Code section 17200 (at times referred to herein as "UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…"

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

70.     ROBINHOOD has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. There is no countervailing benefit to ROBINHOOD's conduct as complained of herein.

71.     ROBINHOOD has engaged in unlawful acts or practices by its violations of the Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), as set forth through the acts and practices alleged in this Complaint.

72.     ROBINHOOD's affirmative misrepresentations and material omissions regarding the services it would provide constitute unfair, deceptive, and misleading business practices.

73.     The information Defendants misrepresented and concealed would be and is material to reasonable consumers in that at no time did ROBINHOOD disclose that it would restrict trading for all of its customers without regard for the nature of the trading activity.

74.     Defendants' conduct is also fraudulent.   Defendants prevented Plaintiff and members of the Class from trading the BLOCKED STOCKS and prevented users from accessing their accounts and their actual investment funds.

75.     Defendants' conduct and the harm they caused, and continues to cause, is not reasonably avoidable by Plaintiff and the Class members. Defendants intentionally prevented Plaintiff and the Class members from making legitimate trades in the BLOCKED STOCKS.

76.     Had Plaintiff and the Class members known that the Defendants would intentionally prevent them from trading the BLOCKED STOCKS and/or access to their accounts and actual investment funds, then they would not have used the Defendants' services.

77.     Defendants' conduct is also unlawful and violates FINRA rules requiring them to make disclosures to consumers and not to make false and misleading advertising, as alleged herein.

78.     Defendants' conduct, misrepresentations, and omissions have prevented Plaintiff and Class members from making fully informed decisions about whether to use ROBINHOOD's services. Had Plaintiff and members of the Class in fact known of the true nature of ROBINHOOD's services and capabilities, they would not have placed their money with ROBINHOOD in the first place.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

79.     Plaintiff and Class members have suffered an injury in fact, including the loss of money and/or property as a result of Defendants' unfair, unlawful, and/or deceptive practices, as set forth herein.

80.     The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the State of California.

81.     Defendants' unfair, fraudulent, and unlawful business practices directly and proximately caused damages to Plaintiff and the Class members.

82.     Plaintiff requests that this Court enjoin ROBINHOOD from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class members any money Defendants acquired through Defendants' unfair competition including, but not limited to, restitution.

## SIXTH CAUSE OF ACTION

### Violation of California False Advertising Law

### Cal. Bus. & Prof. Code § 17500, *et seq*.

### (By Plaintiff Against All Defendants)

83.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

84.     California Business and Professions Code section 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

85.     ROBINHOOD engaged in advertising and marketing in which it caused statements to be made or disseminated throughout California about the ability of consumers to engage in unlimited commission-free trading with intent to directly or indirectly induce consumers like

1   Plaintiff and Class members to use ROBINHOOD.

2   86.   ROBINHOOD's statements about unlimited commission-free trading were false,

3   misleading, and likely to deceive the public and/or have deceived the public by falsely representing

4   the characteristics of them, as set forth above.

5   87.   At the time Defendants made and disseminated the statements alleged herein, they

6   knew or should have known that the statements were untrue or misleading, and Defendants acted in

7   violation of California Business and Professions Code section 17500.

8   88.   ROBINHOOD's statements regarding unlimited commission-free trading were

9   material to Plaintiff's and Class members' decision to use the platform, and Plaintiff and Class

10   members reasonably relied on Defendants' statements.

11   89.   Had Plaintiff and Class members known that in fact ROBINHOOD did not intend to

12   offer unlimited commission-free trades on all stocks and that it would instead restrict trading in the

13   BLOCKED STOCKS as set forth herein, they reasonably would not have become ROBINHOOD

14   customers.

15   90.   Plaintiff and members of the Class suffered an injury in fact, including the loss of

16   money or property as a result of Defendants' unfair, unlawful, or deceptive practices.

17   91.   Plaintiff, on behalf of himself and on behalf of the Class, seeks restitution, injunctive

18   relief, and all other allowable relief under Business and Professions Code section 17500.

19   **SEVENTH CAUSE OF ACTION**

20   **Breach of Fiduciary Duty**

21   **(By Plaintiff Against All Defendants)**

22   83.   Plaintiff repeats and realleges each and every allegation contained in the paragraphs

23   above as though fully set forth herein.

24   84.   Broker-dealers like ROBINHOOD owe a fiduciary duty to their customers, such as

25   Plaintiff and the members of the Class. This fiduciary duty imposed on ROBINHOOD required it

26   to act competently and with the utmost good faith in the best interests of Plaintiff and the members

27   of the Class.

28   / / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

85.     Plaintiff and the members of the Class as ROBINHOOD's customers trusted it to provide the services advertised and promised, namely, unlimited commission-free trading.

86.     The fiduciary duty arising from the relationship between Plaintiff and the members of the Class, on the one hand, and ROBINHOOD, on the other hand, was breached when it prevented Plaintiff and members of the Class from freely trading in the BLOCKED STOCKS and access to their accounts and actual investment funds.

87.     Defendants breached their fiduciary duties directly and proximately caused damage to Plaintiff and the members of the Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Class, demands a jury trial and prays for judgment as follows:

A.     An order certifying the proposed Class, designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

B.     A declaration that Defendants are required to provide notice to the Class and to pay for such Notice;

C.     For a declaration of the rights and duties of the Parties to the agreements discussed herein;

D.     For a declaratory judgment that Defendants' actions complained herein are violations of the laws set forth herein;

E.     Preliminarily and permanently enjoining Defendants from violating their duties and the rights of Plaintiff and the Class as alleged herein;

F.     An award to Plaintiff and the Class of damages, including punitive damages, in an amount to be proven at trial on all Causes of Action except Four through Six;

G.     An award of prejudgment and post-judgment interest, as provided by law;

H.     An award of attorneys' fees and costs, as allowed by law; and

/ / /

/ / /

/ / /

19

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

I.    For such other and further relief as the Court may deem just and proper.

DATED: February 23, 2021       Respectfully submitted,

**KIESEL LAW LLP**


By:    */s/ Jeffrey A. Koncius*
        Paul R. Kiesel
        Jeffrey A. Koncius
        Cherisse H. Cleofe

        **RICHARD C. DALTON, LLC**
        Richard C. Dalton

        Attorneys for Plaintiff CHRISTIAN A. DALTON, Individually and on Behalf of All Others Similarly Situated

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Case No. 3:21-cv-00697-KAW
FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and on behalf of the Class, demands a jury trial on all issues so triable.

DATED: February 23, 2021                Respectfully submitted,

                                        **KIESEL LAW LLP**


                                        By:    _/s/ Jeffrey A. Koncius_
                                               Paul R. Kiesel
                                               Jeffrey A. Koncius
                                               Cherisse H. Cleofe

                                               **RICHARD C. DALTON, LLC**
                                               Richard C. Dalton

                                               Attorneys for Plaintiff CHRISTIAN A. DALTON,
                                               Individually and on Behalf of All Others Similarly
                                               Situated

1

## <u>PROOF OF SERVICE</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and not a party to this action. I am
employed in the County of Los Angeles, State of California. My business address is 8648 Wilshire

4

Boulevard, Beverly Hills, CA 90211-2910.

5

On February 23, 2021, I served true copies of the following document(s) described as **FIRST
AMENDED CLASS ACTION COMPLAINT** on the interested parties in this action as follows:

6

7

Kevin J. Orsini                                    Counsel for Defendants
    korsini@cravath.com

8

**CRAVATH, SWAINE & MOORE LLP**
825 8th Avenue
New York, NY 10019

9

10

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the
document(s) to be sent from e-mail address jmendez@kiesel.law to the persons at the e-mail

11

addresses listed in the Service List. I did not receive, within a reasonable time after the
transmission, any electronic message or other indication that the transmission was unsuccessful.

12

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the

13

persons at the addresses listed in the Service List and placed the envelope for collection and
mailing, following our ordinary business practices. I am readily familiar with Kiesel Law LLP's

14

practice for collecting and processing correspondence for mailing. On the same day that the
correspondence is placed for collection and mailing, it is deposited in the ordinary course of

15

business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

16

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct and that I am employed in the office of a member of the bar of this

17

Court at whose direction the service was made.

18

Executed on February 23, 2021, at Beverly Hills, California.

19

20

_____
Jessica Mendez

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California